CASE NO. 24-1299

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

———————————

STEVEN T. YOUNG,

*Petitioner,*

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR;
HUNTINGTON INGALLS INDUSTRIES, INC.,

*Respondents.*

———————————

ON APPEAL FROM THE BENEFITS REVIEW BOARD
BRB-1 : 22-0458

———————————

**OPENING BRIEF OF PETITIONER**

———————————

Matthew H. Kraft
MATTHEW H. KRAFT, P.L.C.
317 30th Street
Virginia Beach, VA 23451
757-390-3340
matt@mattkraftlaw.com

*Counsel for Petitioner*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1299__    Caption: __Steven T. Young v. Director, OWCP; Huntington Ingalls Industries, Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Steven T. Young__
(name of party/amicus)

who is __Appellant/Petitioner/Claimant__, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.  Does party/amicus have any parent corporations? ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                        ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)       ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                        ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?            ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____          Date: _____04/23/2024_____

Counsel for: Steven T. Young, Appellant

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................ iii

I.      JURISDICTIONAL STATEMENT ...............................................1

II.     STATEMENT OF THE ISSUES .....................................................2

III.    STATEMENT OF THE CASE ........................................................2

        A.      Section 922 Modification Claim and *ALJ Decision and Order Denying Modification*, dated December 15, 2020 (JA6) .....................2

        B.      BRB *Decision and Order* of August 27, 2021 (JA43).........................8

        C.      Judge Markley's *Decision and Order on Remand* of July 15, 2022 (JA51) ...........................................................12

        D.      BRB *Decision and Order* of February 9, 2024 (JA66)..................... 14

        E.      Stipulations ...........................................................15

        F.      Testimony of and Evidence from H. Gray Broughton, M.Ed., CRC, CCM, CRP, Diplomate, American Board of Vocational Experts (Board Certified) ...................................................16

        G.      Vocational Evaluation Report of Gordon Marc Cooper, LPC, CRC, CRP ........................................................... 20

        H.      Testimony of Barbara Harvey ......................................... 21

IV.     SUMMARY OF THE ARGUMENT ........................................................27

 V.     ARGUMENT...........................................................................31

        A.      Standards of Review........................................................... 31

B.  The BRB erred as a matter of law by failing to find that, in relying upon vocational evidence that failed to consider and properly account for essential vocational considerations - most notably Mr. Young's age and extended absence from the work force - the ALJ committed legal error such that her corresponding decision denying permanent total disability benefits is contrary to law and cannot be upheld herein........................................................32

CONCLUSION ........................................................................... 45

REQUEST FOR ORAL ARGUMENT ................................................. 45

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT.................46

## TABLE OF AUTHORITIES

**STATUTES:**

5 U.S.C. § 551 *et seq.*, Administrative Procedures Act ...................................... 7, 28

33 U.S.C. § 901 *et seq.*, Longshore and Harbor Workers 'Compensation Act ...1, 15

33 U.S.C. Section 921(b) ..................................................................................1

33 U.S.C. Section 921(b)(3) .............................................................................31

33 U.S.C. Section 921(c) ..................................................................................1

33 U.S.C. Section 922 ....................................................................................2, 5

**REGULATIONS:**

20 C.F.R. Section 702.273 ................................................................................1

20 C.F.R. Section 702.391 ................................................................................1

20 C.F.R. Section 802.410 ................................................................................1

**CASES:**

*American Grain Trimmers, Inc. v. Director, OWCP,*
    181 F.3d 810 (7th Cir. 1999), *cert. denied*, 528 U.S. 1187 (2000) .............. 31-32

*Armfield v. Shell Offshore, Inc.,*
    30 BRBS 122 (1996) .......................................................................................33

*Armfield v. Shell Offshore,*
    25 BRBS 303 (1992).................................................................................. 36-37

*Bath Iron Works Corp. v. White,*
    584 F.2d 569, 8 BRBS 818 (1st Cir. 1978) .......................................................32

*Bishop v. Lucent Technologies, Inc.,*
    520 F.3d 516 (6th Cir. 2008) ....................................................................28, 44

*Brown v. Maryland Shipbuilding & Drydock Co.*,
18 BRBS 104 (1986)............................................................................ 37

*Bumble Bee Seafoods v. Director, OWCP*,
629 F.2d 1327, 12 BRBS 660 (9th Cir. 1980)....................................33

*Bunge Corp. v. Carlisle and T. Michael Kerr, Deputy Assist. Sec., OWCP*,
227 F.3d 934 (7th Cir. 2000) ...............................................................33

*Bunge Corp. v. Carlisle*,
227 F.3d 934, 34 BRBS 79(CRT) (7th Cir. 2000), aff'g 33 BRBS 133 (1999).37

*Ceres Marine Terminal v. Hinton*,
243 F.3 222, 35 BRBS 7(CRT) (5th Cir. 2001) ................................................10

*Ceres Marine Terminals, Inc. v. Knight*,
Case No. 97-2767 (4th Cir. Aug. 19, 1998) ................................. 35-36

*Colaruotolo v. SSA Containers, Inc., et al.*,
U.S. Ct. App. 9th Cir., Case No. 16-72856 (April 19, 2018)...................... 34-35

*Cordero v. Triple A Machine Shop*,
580 F.2d 1331, 8 BRBS 744 (9th Cir. 1978), *cert. denied*,
440 U.S. 911 (1979)....................................................................... 31, 37

*Daniele v. Bromfield Corp.*,
11 BRBS 801 (1980)............................................................................34

*Delay v. Jones Washington Stevedoring Co.*,
31 BRBS 197 (1998)............................................................................37

*Duhagon v. Metropolitan Stevedore Co.*,
169 F.3d 615, 33 BRBS 1(CRT) (9th Cir. 1999) ......................... 37-38

*Edwards v. Director, OWCP*,
99 F.2d 1374 (9th Cir. 1993); *cert. denied*, 511 U.S. 1031 (1994) ............. 33-34

*E. S.S. Lines v. Monahan*,
110 F.2d 840 (1st Cir. 1940).............................................................33

iv

*Fox v. W. State, Inc.*,
  31 BRBS 118 (1997).........................................................................15

*Gilchrist v. Newport News Shipbuilding & Dry Dock Co.*,
  135 F.3d 915 (4th Cir. 1998) ....................................................31, 32

*Goldsmith v. Director, OWCP*,
  838 F.2d 1079, 21 BRBS 30(CRT) (9th Cir. 1988) ..........................38

*Green v. Suderman Stevedores*,
  23 BRBS 322 (1990).........................................................................34

*Hayes v. P & M Crane Co.*,
  23 BRBS 389 (1990), *vacated*, 24 BRBS 116 (CRT) (5th Cir. 1991) ..............34

*Jenkins v. Puerto Rico Marine, Inc.*,
  BRB No. 96-1635 ............................................................................ 38

*Jensen v. Weeks Marine, Inc. (Jensen II)*,
  34 BRBS 147 (2000)......................................................................... 6

*Johnson v. Ceres Marine Terminals, Inc.*,
  BRB No. 15-0153, *at fn.* 6 (Jan. 14, 2016)...................................... 38

*Lennon v. Waterfront Transport*,
  20 F.3d 658, 28 BRBS 22(CRT) (5th Cir. 1994) ...............................37

*Lentz v. Cottman Co.*,
  852 F.2d 129, 21 BRBS 109 (CRT) (4th Cir. 1988) ..........................34

*Lockheed Shipbuilding v. Director, OWCP*,
  951 F.2d 1143, 25 BRBS 85(CRT) (9th Cir. 1991) ...........................38

*Marathon Ashland Petroleum v. Williams*,
  733 F.3d 182, 47 BRBS 45(CRT) (6th Cir. 2013) ............................ 35

*Mijangos v. Avondale Shipyards, Inc.*,
  948 F.2d 941 (5th Cir. 1991) ...........................................................15

*Newport News Shipbuilding & Dry Dock Co. v. Director, OWCP [Brickhouse]*,
    315 F.2d 286, 36 BRBS 85(CRT) (4th Cir. 2002) ...............................................9

*Newport News Shipbuilding and Dry Dock Co. v. Vinson*,
    4th Cir. Record No. 01-2300 (June 20, 2002) ...................................................32

*New Orleans (Gulfwide) Stevedores v. Turner*,
    661 F.2d 1031, 14 BRBS 156 (5th Cir. 1981), *rev'g* 5 BRBS 418 (1977).....9, 33

*O Keeffe v. Smith, Hinchman & Grylls Associates, Inc.*,
    380 U.S. 359 (1965)...........................................................................................31

*Owens v. Traynor*,
    274 F.Supp. 770 (D.Md. 1967), *aff d*, 396 F.2d 783 (4th Cir. 1968),
    *cert. denied*, 393 U.S. 962 (1968)...................................................................32

*Patterson v. Omniplex World Services*,
    36 BRBS 149 (2003)............................................................................................9

*Perini Corp. v. Heyde*,
    306 F.Supp. 1321 (D.R.I. 1969) .......................................................................32

*Pietrunti v. Director OWCP*,
    119 F.3d 1035, 31 BRBS 84(CRT) (2d Cir. 1997)............................................36

*Pilkington v. Sun Shipbuilding & Dry Dock Co.*, 9
    BRBS 473 (1978).............................................................................................33

*Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs*,
    473 F.3d 253 (6th Cir. 2007) ............................................................................32

*Price v. Dravo Corp.*,
    20 BRBS 94 (1987)............................................................................................34

*Quick v. Martin*,
    397 F.2d 644 (D.C. Cir. 1968)..........................................................................33

*Rieche v. Tracor Marine*,
    16 BRBS 272 (1984).........................................................................................34

*Royce v. Elrich Constr. Co.*,
17 BRBS 157 (1985)..................................................................33

*Salzano v. American Stevedores*,
2 BRBS 178 (1975), *aff'd*, 538 F.2d 933, 4 BRBS 195 (2d Cir. 1976)..............33

*See v. Washington Metropolitan Area Transit Authority*,
36 F.3d 375 (4th Cir. 1994) ........................................................32

*SGS Control Services v. Director, OWCP*,
86 F.3d 438, 30 BRBS 57(CRT) (5th Cir. 1996) ..............................32

*Thompson v. Lockheed Shipbuilding & Constr. Co.*,
21 BRBS 94 (1988) ....................................................................34

*Todd Shipyards Corp. v. Donovan*,
300 F.2d 741 (5th Cir. 1962) ......................................................37

*Trans-State Dredging v. Benefits Review Bd. (Tarner)*,
731 F.2d 199, 16 BRBS 74 (CRT) (4th Cir. 1984), *rev'g*
*Tarner v. Trans-State Dredging*, 13 BRBS 53 (1980) ......................9, 10, 33, 39

*Troxel v. Metropolitan Stevedore Co.*,
BRB No. 04-0680 (May 25, 2005) ..............................................38

*Universal Camera Corp. v. NLRB*,
340 U.S. 474 (1951)...................................................................38

*Vasquez v. Continental Maritime of San Francisco, Inc.*,
23 BRBS 428 (1990)....................................................................6

*Vonthronsohnhaus v. Ingalls Shipbuilding, Inc.*,
24 BRBS 154 (1990)...................................................................34

*Watkins v. Newport News Shipbuilding and Dry Dock Co.*,
BRB No. 01-0538 (March 5, 2002) ..............................................38

*Wheeler v. Newport News Shipbuilding & Dry Dock Co.*,
37 BRBS 107 (2003)...................................................................15

*White v. Peterson Boatbuilding Co.*,
    29 BRBS 1 (1995)........................................................................................11, 36

*Wilson v. Dravo Corp.*,
    22 BRBS 463 (1989).........................................................................................15

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**STEVEN T. YOUNG,**
**Petitioner,**

**v.**                                  **CASE NO. NO. 24-1299**

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES. DEPARTMENT OF LABOR; HUNTINGTON INGALLS INDUSTRIES, INC.,**
**Respondents.**

### ON APPEAL FROM THE BENEFITS REVIEW BOARD
### BRB: 22-0458

### OPENING BRIEF OF PETITIONER

## I.    JURISDICTIONAL STATEMENT

This matter involves a claim by the Petitioner, Steven T. Young, under the provisions of the Longshore and Harbor Workers 'Compensation Act ("Longshore Act" or "LHWCA" or "Act"), 33 U.S.C. Section 901 *et seq.* Petitioner appeals the *Decision and Order* of the Benefits Review Board ("BRB") of the U.S. Department of Labor of February 9, 2024, which was a direct appeal under 33 U.S.C. Section 921(b) of the *Decision and Order on Remand* of July 15, 2022 of Administrative Law Judge ("ALJ") Monica Markley. This Court has subject matter and appellate jurisdiction over the matter pursuant to 33 U.S.C. Section 921(c). *See also* 20 C.F.R. Sections 702.273, 702.391, and 802.410.

## II.   STATEMENT OF THE ISSUES

*A.   Whether the BRB erred as a matter of law by failing to find that, in relying upon vocational evidence that failed to consider and properly account for essential vocational considerations - most notably Mr. Young s age and extended absence from the work force - the ALJ committed legal error such that her corresponding decision denying permanent total disability benefits is contrary to law and cannot be upheld herein?*

## III.   STATEMENT OF THE CASE

### A.   Section 922 Modification Claim and ALJ *Decision and Order Denying Modification*, dated December 15, 2020 (JA6)

Petitioner, Steven T. Young, is currently being paid PPD benefits (based on a loss of wage earning capacity ("LWEC")) at the weekly rate of $239.50 from July 27, 2000 and continuing (based on a minimum wage earning capacity), which benefits were awarded through an ALJ *Decision and Order*, dated February 12, 2001 (JA256-275), an ALJ *Decision and Order on Remand*, dated November 14, 2002 (JA295-305), and an ALJ *Second Decision and Order on Remand*, dated July 14, 2004 (JA324-331).[1]

---

[1]     The proceedings also included an ALJ *Order Denying Motion to Reconsider*, dated March 9, 2001 (JA277-281), a BRB *Decision and Order*, dated March 18, 2002 (JA283-293), an ALJ *Erratta Order*, dated January 29, 2003 (JA307-312), a BRB *Decision and Order*, dated October 31, 2003 (JA314-322), a BRB *Decision and Order*, dated June 30, 2005 (JA332-338), and a U.S. Court of Appeals for the Fourth Circuit *Mandate*, dated November 15, 2006, *Opinion* of September 8, 2006, and *Order denying Petition for Rehearing and Rehearing En Banc*, dated November 7, 2006 (JA340-358). As noted in the Stipulations, below, permanent partial disability benefits were awarded based on Mr. Young's work-related thoracic outlet syndrome and cervical spine under the current OWCP File Number. The additional

Those prior decisions and the hearing record reflect that Mr. Young is a former employee in the X-18 welding department at Newport News Shipbuilding and Dry Dock Company; that he began his work with the Employer on June 19, 1977 directly out of high school (with that being his highest level of eduction, with no additional trade certifications of any kind) (JA110, JA112, JA724, JA808, JA1073-1074); that, at the time of the prior hearing in the prior proceedings in the matter on August 11, 2000, he was 41 years old (he is now 65 (date of birth June 23, 1959)) (JA110, JA805); that his work when he previously worked for the Employer required physical welding work in confined spaces with extensive crawling, kneeling, lifting, and overhead work, both in the shop and on board vessels (JA110, JA111-112, JA724-725, JA809-810); that he has been permanently unable to perform that work by virtue of his injury for multiple decades (the parties agreed that Mr. Young cannot return to his full-duty, pre-injury work (see JA31)); that he stopped working for the Employer on May 1, 1989 because of his injury-related problems (he was passed out on that date by the Employer, as they did not have work within his work capacity) (JA110, JA26, JA773-774, JA808, JA817, JA826); and that, except for two very

---

litigation in the matter primarily concerned the ALJ's award of benefits based on the neck and thoracic outlet syndrome and the award of total disability benefits prior to July 27, 2000 based on rejection of the Employer's proffered evidence of suitable alternate employment prior to that time.

brief, unsuccessful attempts to return to work, he has not worked since that time (JA113-114, JA122-123, JA130, JA262, JA746, JA753-754, JA841, JA1074-1077).

The record further reflects that, after the extensive medical treatment addressed through the prior proceedings,[2] Mr. Young came under the care of Dr. Jonathan Partington, Board Certified neurosurgeon, on referral from his prior doctor, Dr. Noel Parent (JA111, JA749, JA768), including two cervical surgeries performed by Dr. Partington: (1) an anterior C6-7 discectomy with inner body fusion with cadaver bone graft and micro-dissection on January 18, 2000 (JA111; JA600), and (2) a posterior bilateral C7 foraminotomy with C6 to C7 posterolateral fusion with lateral mass screws, and VITOSS with bone marrow aspirates with fluoroscopic guidance on March 5, 2008 (JA115; JA610).

Following that second surgery, Mr. Young was again given permanent restrictions (JA116; JA535, JA538, JA630-639). However, as of March 26, 2015, Dr. Partington imposed modified - more severe - permanent restrictions, including no working overhead; no lifting to exceed 5 pounds; and no pushing, pulling, or hand manipulation (JA116-117, JA567). These restrictions are on their face more extensive than those upon which the prior award was based, due in part to Mr.

---

[2]     The record confirms that Mr. Young underwent right wrist surgery on April 4, 1988, a right first rib resection for right side thoracic outlet syndrome on January 16, 1990, a left first rib resection for left side thoracic outlet syndrome on May 3, 1994, and a left elbow ulnar nerve surgery on February 26, 1997 for cubital tunnel syndrome (JA114, JA26, JA480, JA667, JA668).

Young's limitations in the use of his hands and arms (increased weight restriction (10 pounds to 5 pounds)); and chronic nerve issues (addition of no pushing, pulling, or hand manipulation).[3]

Mr. Young asserted herein that these changes in his restrictions, coupled with his advanced age, extended absence from the work force, and other vocational factors, constituted changes in his physical and economic conditions under Section 922 of the Act which directly impact his wage earning capacity and benefit entitlement. He therefore asserted an entitlement to permanent total disability benefits as of March 26, 2015, the date of the imposition of the more severe restrictions, to the present and continuing, along with corresponding compounded annual increases.

In the initial *Decision and Order Denying Modification* entered in this matter by Judge Markley on December 15, 2020 (JA6), Judge Markley first properly found that Mr. Young had established a change in condition under Section 922 of the Act as of March 26, 2015 (JA26-29). In so doing, Judge Markley relied directly upon the deterioration in Mr. Young's physical condition reflected by his testimony, and supported by the medical records, along with the specific changes in physical

---

[3]     Mr. Young's extensive physical complaints and the difficulties with the use of his hands, including but not limited to pushing, pulling, and hand manipulation, can be found, *inter alia*, at JA116-121, JA1092. His understanding is basically that he couldn't use his hands to perform work as a result of those restrictions (JA117).

restrictions referenced above, including, *inter alia*, the restrictions against lifting over 5 pounds, pushing, pulling, or hand manipulation (Tr. JA27-29 (citing JA116-118, JA1104-1105, JA515, JA937-940, JA520-521, JA610-611, JA947, JA949-950, JA561, JA567, JA1027-1028, JA1031, JA575-576, JA1035-1037); see also JA114, JA115, JA525, JA527, JA530, JA534, JA541, JA543, JA545, JA547, JA551, JA552, JA553, JA578, JA589, JA640-643, JA665, JA1011-1002, JA1040 with regard to the deterioration in Mr. Young's condition[4]).[5]

At the same time, Judge Markley then went on to evaluate whether the evidence established total disability.[6] In finding that it did not, and finding that the Employer met its burden of establishing the existence and realistic availability of suitable alternate employment for Mr. Young, Judge Markley relied primarily upon the evidence and testimony from the Employer's vocational expert, Ms. Barbara Harvey. In particular, she credited 15 out of 22 proffered jobs from two labor market

---

[4]     Dr. Partington also noted on March 26, 2015 that "I have recommended [Mr. Young] be retired on medical disability as he has a permanent nerve injury and permanent restrictions" (JA1030).

[5]     As noted by the Board in its initial *Decision and Order*, the Employer did not challenge the ALJ's finding that the record established a change in condition under the Act (JA45, fn. 2).

[6]     *See Vasquez v. Continental Maritime of San Francisco, Inc.*, 23 BRBS 428 (1990) (once the proponent has established a change in condition and a basis for modification, the standards for determining the extent of disability are the same as in an initial proceeding); *see also Jensen v. Weeks Marine, Inc. (Jensen II)*, 34 BRBS 147 (2000).

surveys prepared by Ms. Harvey, dated April 29, 2018 and May 1, 2019.[7] Based on those findings, Judge Markley denied the change to permanent total disability benefits. Mr. Young appealed that *Decision and Order Denying Modification* to the Benefits Review Board, arguing that, in crediting the Employer's evidence, the ALJ committed reversible error.

Specifically, Mr. Young asserted that, in relying upon vocational evidence that failed to properly account for an essential vocational consideration - notably, the very restrictions relied upon by the ALJ to support the finding of a change in condition, including restrictions against pushing, pulling, and hand manipulation - the ALJ committed legal error. Additionally, Mr. Young asserted that, in relying upon vocational evidence that failed to account for additional essential vocational considerations - most notably Mr. Young's age and his extended absence from the work force - the ALJ committed further legal error.

Mr. Young further submitted that, at a minimum, the ALJ's failure to address the factors of age and Mr. Young's extended absence from the work force - a glaring approximately 30 year hole in his work history - violated her duties under the Administrative Procedures Act ("APA"), 5 U.S.C. Section 551 *et seq.* Finally, even

---

[7]     In that analysis, Judge Markley properly rejected seven of the positions identified by the Employer's vocational expert as unsuitable on their face to the extent they clearly exceeded Mr. Young's March 26, 2015 physical restrictions from Dr. Partington (JA33).

if the Employer's vocational evidence should not have been rejected outright based on its fundamental flaws outlined above, Mr. Young further submitted that, especially within the context of those flaws, the Employer's evidence was inherently incredible, that reliance thereon was patently unreasonable, and that the ALJ's reliance thereon was otherwise not supported by substantial evidence of record such that the ALJ's finding that Employer met its burden of establishing suitable alternate employment should be reversed.

**B.     BRB *Decision and Order* of August 27, 2021 (JA43)**

Upon review of the ALJ's *Decision and Order Denying Modification*, the Board initially rejected Claimant's assertion that the ALJ's acceptance of the Employer's vocational expert's interpretation of Mr. Young's modified physical restrictions and physical capacity was improper.[8] The Board further rejected Claimant's assertion that the ALJ erred in crediting the Employer's vocational expert

---

[8]     Mr. Young continues to maintain herein that, given that the Employer bore the affirmative burden of proof on the suitable alternate employment inquiry, and that there was no qualification from Dr. Partington with regard to the no pushing, pulling, or hand manipulation restrictions within a work/job context, any failure of proof with regard to the nature of the restrictions and their application to the jobs relied upon by the Employer in this matter should have been applied strictly against the Employer. Accordingly, both the inference that the restrictions did not "mean" what the words said (that they didn't apply to "normal daily activities, but only specific repetitive movements such as pushing boxes or carts or manipulating objects" (JA44)(see also JA45-47)), and the corresponding conclusion that the remaining jobs at issue in this case did not violate the restrictions is improper as a matter of law on the current record.

over the the evidence and testimony from H. Gray Broughton, M.Ed., CRC, CCM, CRP, Diplomate, American Board of Vocational Experts (JA45-47).

At the same time, the Board agreed that the ALJ's determination that the Employer established the existence of suitable alternate employment should be vacated. Specifically, the Board found as follows:

> Claimant next contends the administrative law judge erred in concluding Employer established suitable alternate employment. We agree. Although the administrative law judge assessed the suitability of the jobs Ms. Harvey identified in light of Claimant's physical capabilities, *she did not assess their suitability in view of Claimant s vocational factors, age, and length of absence from the workforce*.[]

> In determining whether an employer has established the availability of suitable alternate employment, the United States Court of Appeals for the Fourth Circuit, within whose jurisdiction this case arises, has stated an administrative law judge should consider not only a claimant's physical restrictions but also "whether there exists a reasonable likelihood, given the claimant's *age*, *education*, and *vocational background* that he *would be hired if he diligently sought the job*." *Trans-State Dredging*, 731 F.2d at 201, 16 BRBS at 76(CRT) (quoting *New Orleans (Gulfwide) Stevedores. v. Turner*, 661 F.2d 1031, 1043, 14 BRBS 156, 165(CRT) (5th Cir. 1981)). "Disability under the Act is determined not only on the basis of physical condition, but also on factors such as *age*, *education*, *employment history, rehabilitative potential*, and the *availability of work that the claimant can do*." *Newport News Shipbuilding & Dry Dock Co. v. Director, OWCP [Brickhouse]*, 315 F.2d 286, 36 BRBS 85(CRT) (4th Cir. 2002). Thus, *an administrative law judge must compare the claimant s* physical restrictions and *vocational factors with the requirements of the jobs*. *See Patterson v. Omniplex World Services*, 36 BRBS 149 (2003).

> The administrative law judge largely limited her consideration of the suitability of the jobs to Claimant's physical restrictions and *did not consider any other factors, such as his vocational skills, that bear on his ability to obtain a particular job and perform its required duties*.

*See, e.g., Trans-State Dredging*, 731 F.2d at 201, 16 BRBS at 76(CRT) ("the standard should incorporate the specific capabilities of the claimant, that is, his *age*, *background*, *employment history and experience*, and intellectual and physical *capacities*."); *Ceres Marine Terminal v. Hinton*, 243 F.3 222, 35 BRBS 7(CRT) (5th Cir. 2001) (affirming the administrative law judge's finding that employer did not establish suitable alternate employment considering the claimant's "lack of mathematical *skills*, his *age*, and *the fact that his entire employment history is limited to unskilled, heavy manual labor*.").

The evidence in the record does not support the administrative law judge's conclusion that Claimant is qualified for some of the jobs she found suitable. For example, the jobs as a Service Greeter at Casey Auto Group, a Service Valet at Checkered Flag, and a Shuttle Driver at Hall Honda list among their qualifications the ability to operate manual transmissions. The record is devoid of evidence that Claimant is able to operate manual transmissions. *See* EX 59; EX 63. Moreover, the administrative law judge did not address whether Claimant's restrictions against "pushing, pulling, hand manipulation" render him incapable of performing this task. CX 24.

The administrative law judge also did not assess the suitability of other jobs requiring a variety of skills in light of Claimant's vocational factors. For example, several of the jobs, including the Transportation Dispatcher position at Virginia Premier Health Plan and the Service Greeter position at Casey Auto Group, list among their requirements "excellent customer service." The administrative law judge did not address whether Claimant's lack of relevant experience would disqualify him from those positions.[FN6]

[FN6]  Similarly, a number of positions, including the Service Valet position at Checkered Flag and a Security Officer at Dunbar, list among their qualifications strong written and oral communication and interpersonal skills. The Security Officer at Dunbar position also lists among its requirements "Must be able to acquire and maintain a VADCJS Unarmed Security Officer Certification." EX 59 at 13.

*Finally, the administrative law judge also did not consider whether Claimant s age and background make him likely to be hired for any particular position*. She limited her consideration to Claimant's

physical restrictions but *did not address whether his age and long absence from the work force effects his ability to compete for a job*.[FN7]

[FN7]. *We note Claimant is over 60 years old and essentially has not worked since 1989*. He testified that after stopping his work as a welder, he worked briefly for ActMedia, installing and removing coupon machines in grocery stores, but he stopped that work because he could not physically perform it. *See* Tr. at 17-18. He also worked for the Virginia Department of Transportation for one day in 2016 but then told the employer he could no longer work because of the pain in his shoulders and an inability to stand for hours. *See id.* at 27. . . .

*Mr. Broughton stated Claimant s age would not make him a good candidate for retraining, see* Tr. at 53- 54; CX 21 at 12, and *Ms. Harvey, whose opinion the administrative law judge generally accepted, also acknowledged a person s age and prolonged absence from the work force could affect that person s ability to obtain a job. See* Tr. at 135. *The administrative law judge did not adequately address whether Claimant is reasonably likely to be hired in any of the identified positions considering his age and work history*.

We therefore vacate the administrative law judge's finding that Employer established suitable alternate employment and remand this claim for her to reconsider the issue. On remand, the administrative law judge must independently assess whether the jobs Ms. Harvey identified as suitable are, in fact, suitable given all relevant factors. *She should consider whether Claimant s specific background and experience meet the stated requirements and qualifications for each job. See White v. Peterson Boatbuilding Co.*, 29 BRBS 1 (1995). *In addition, she must address the likelihood of Claimant s obtaining a job given his age and length of absence from the workforce.*

*Accordingly, we affirm the administrative law judge s finding that Claimant established a change in his physical condition. We vacate her finding that Employer established suitable alternate employment and remand the case for further proceedings consistent with this opinion.*

(JA47-50, fn. 5 omitted; emphasis added).

11

C.    **Judge Markley's *Decision and Order on Remand* of July 15, 2022 (JA51)**

The primary errors committed by the ALJ in her *Decision and Order on Remand* concern her failure to fully consider and properly address two of the factors which she was specifically directed to address by the Board on remand, specifically, Mr. Young's age and length of absence from the workforce, both on a general level, and with respect to each remaining position upon which she relied in finding that the Employer met its affirmative burden of proof of establishing the existence and realistic availability of suitable alternate employment for Mr. Young in light of all the relevant factors. In that regard, the ALJ found as follows:

> At the time of the hearing in October 2019, Claimant testified that he was 60 years old, and he has essentially not worked, aside from two failed attempts, since his injuries in the late 1980s. (TR at 14, 17-18, 26.) Ms. Harvey testified at the hearing that an individual's age and absence from the workforce can impact his ability to compete for jobs. *Id.* at 134-36. However, she also reported that the job market in Hampton Roads was generally good for people seeking employment, and Claimant testified that as recently as 2016, he obtained employment with the Virginia Department of Transportation (TR at 26, 93-94.) In addition, Ms. Harvey testified that in completing a labor market survey, she considers the whole individual, including their physical restrictions, medical history, demographics, employment history, and educational history. *Id.* at 80. *Therefore, I am able to infer that she considered Claimant s age and lack of recent work history in identifying jobs that would be suitable for him as of the dates of her surveys*. This conclusion is supported by the fact that all the jobs accepted as suitable alternate employment are either unskilled or semiskilled work, per their DOT descriptions, and would be considered entry-level in nature. In fact, these are the *exact type of jobs that even a layman would consider appropriate for someone of advanced age and an absence from the workforce to perform*.

(JA56) (emphasis added).

12

After the general conclusion above, the ALJ went on to reject as unsuitable 6 of the jobs which she previously accepted as suitable (JA56-57). Those jobs included two Service Greeter positions with Casey Auto Group, two Service Valet positions with Checkered Flag, and one Lot Attendant position with AmeriPark, which were rejected based on Mr. Young's lack of prior customer service experience (which, as noted by the Board in its initial *Decision and Order*, Mr. Young does not have (JA56, JA48)), and a Shuttle Driver position with Hall Honda, which was rejected due to the fact that the jobs required the ability to operate a manual transmission. In rejecting that job, the ALJ properly noted that "[t]he record is devoid of evidence regarding Claimant's ability to do so" (JA57).[9] At the same time, crediting 9 of the jobs from the 2018 and 2019 labor market surveys, the ALJ again denied the change to permanent total disability benefits (J56-59). The problem is that the ALJ's inference with regard to the vocational counselor's considerations is devoid of support in the record, such that reliance thereon to support any finding of suitable alternate employment is an error of law. Accordingly, Claimant again appealed to the Board.

---

[9]     The ALJ noted that the Service Greeter and Service Valet positions also had that requirement, but were already rejected based on the customer service requirement (JA57).

**D.**    **BRB *Decision and Order* of February 9, 2024 (JA66)**

Through the BRB's *Decision and Order* of February 9, 2024, the Board rejected Claimant's assertions of error noted above. In so doing, the Board somehow found that the ALJ properly considered the factors she was directed to consider referenced above, among the others she is required to consider, in assessing the realistic availability of suitable alternate employment for Mr. Young on the open market, and that she did not err in somehow concluding that the vocational expert upon which the Employer relied in this case to meet their burden of proof on the suitable alternate employment had done so as well, stating as follows:

> On remand, the ALJ reassessed the suitably of the fifteen jobs she initially accepted as SAE, taking into consideration *Claimant s age, absence from the workforce, and vocational background*. D&O at 6. *She determined Ms. Harvey adequately considered Claimant s age and workforce history based on her hearing testimony that she considers the whole individual, including their physical restrictions, medical history, demographics, employment history, and educational history.*" *Id.*; Hearing Transcript (TR.) at 80. In addition, she noted the positions Ms. Harvey offered in her labor market surveys were either unskilled or semiskilled and would be considered entry-level. *Id.*
> . . .
>
> The record supports the ALJ's findings. Contrary to Claimant's assertions, *the ALJ permissibly found that Ms. Harvey adequately considered Claimant s age and work history in her testimony and reports*. Ms. Harvey's September 6, 2018 report indicated she met with Claimant, performed vocational testing, and asked about his work history (noting that his past jobs were "long ago") and concluded that her initial April 29, 2018 report findings remained unchanged regarding his employability. EX 60 at 2; EX 63 at 2. Both Ms. Harvey's April 2018 and May 2019 Labor Market Survey reports also indicated she

14

reviewed Claimant's work history before assessing positions she deemed suitable for him. EX 59 at 4-5; EX 63 at 4-5.

At the hearing, Ms. Harvey testified that in preparing labor market surveys, she assesses the individual's physical restrictions, demographic information, employment history, and educational history. TR. at 80. *While Ms. Harvey stated an individual s age and absence from the workforce could impact his ability to work*, she also testified that the job market in Claimant's community is improving for people seeking employment. TR. at 93-94, 135-136. Thus, the ALJ permissibly found Ms. Harvey *based her opinions on all relevant factors*. *Wheeler v. Newport News Shipbuilding & Dry Dock Co.*, 37 BRBS 107 (2003); *Fox v. W. State, Inc.*, 31 BRBS 118 (1997);[] *Wilson v. Dravo Corp.*, 22 BRBS 463 (1989); *see also Mijangos v. Avondale Shipyards, Inc.*, 948 F.2d 941 (5th Cir. 1991) (the choice among reasonable inferences is left to the ALJ).
. . .

(JA69-71, fn. 4 omitted) (emphasis added).

For the same reasons that were argued to the Board, immediately above, and outlined below, those conclusions simply fail on the current record as a matter of law.

## E.    **Stipulations**

At the hearing in this matter, the parties reached the following Stipulations:

1.    The LHWCA, 33 USC § 901 *et seq.*, as amended, applies to this claim.
2.    The Claimant injured his right hand on February 25, 1988 and left elbow on March 25, 1988. He also suffered thoracic outlet syndrome and injured his cervical spine through his employment with the Employer, with those conditions being subject to the outstanding award for medical and disability benefits in this matter.
3.    The injuries occurred at Newport News Shipbuilding, Newport News, Virginia.
4.    The injuries arose out of and in the course of Claimant's employment with the Employer.

15

5.   There was an Employer/Employee relationship at the time of the injuries.
6.   The Employer was timely notified of the injuries.
7.   The claim was timely filed.
8.   The Notice of Controversion was timely filed.
9.   The District Director's Informal Conference was conducted on January 26, 2018.
10.  The worker's average weekly wage at time of injury was $493.23.
11.  Compensation has been paid as follows:  As outlined in the LS-208 included in the hearing record as Claimant's Exhibit 16.[10]
12.  Claimant was entitled to the benefits paid to date, per the LS-208 included in the hearing record as Claimant's Exhibit 16.
13.  The Claimant reached maximum medical improvement as of July 27, 2000, pursuant to the prior ALJ *Decision and Order*, dated February 12, 2001

(JA239-241, JA101).

## F.   Testimony of and Evidence from H. Gray Broughton, M.Ed., CRC, CCM, CRP, Diplomate, American Board of Vocational Experts (Board Certified)

Mr. H. Gray Broughton, vocational rehabilitation counselor and vocational expert, testified on behalf of Mr. Young in this matter (JA132). Mr. Broughton's extensive education, qualifications, certifications, work history as a vocational rehabilitation specialist, etc. (including his appointment as Commissioner of the Department of Rehabilitation Services for the Commonwealth of Virginia by the

---

[10]   Note that the LS-208 attached to the Stipulations submitted at the hearing, dated April 21, 2008, was not the correct LS-208 reflecting all payments made on the file. Instead, the proper LS-208 showing all payments made is included in the hearing record as Claimant's Exhibit 16, dated January 6, 2009. At a minimum, the parties agree to the payments made as outlined in Claimant's Exhibit 15, which is the LS-208 attached to the Stipulations at the hearing. In any case, the slight difference in the payments reflected by those two documents is not at issue at this time through these proceedings.

Virginia General Assembly from 1999 to 2001) are outlined in the record at JA432-434, JA132-136, JA431-432, JA133-134, JA136.

In Mr. Young's case, he performed a full vocational interview,[11] and his findings from his review of the records and interview with Mr. Young are outlined in his report included as JA429-441, and in his hearing testimony at JA137-141. **Of particular importance to him was the fact that Mr. Young only had one sustained job after high school - his long term position with the Employer as a welder which he can no longer perform** (JA137-138, JA139). The other two jobs outlined in Mr. Young's testimony were very brief, and Mr. Broughton noted that he was unable to continue in those jobs because of his physical problems (JA137). He confirmed that he reviewed all the medical records, the FCEs, the permanent restrictions (Mr. Broughton confirmed he relied in his opinions upon the permanent restrictions imposed by Dr. Partington in March, 2015 (JA144)), and the Employer's labor market surveys and vocational reports, and that he relied on these records and his vocational interview in making his vocational determinations and opinions in this case (JA137-138). He further explained the specific methodology he utilized in Mr. Young's case and the records he reviewed at pages 1 through 3 and pages 4 through 6 of his report (JA429-431, JA432-434).

---

[11]     The details of his interview with Mr. Young are included in his report at pages 6 through 8 (JA434-446; see also JA137).

Mr. Broughton specifically opined that, as a result of his vocational evaluation, his opinion is that Mr. Young is not employable or placeable in full-time or part-time gainful employment on a sustained basis (JA138). He further opined that the medical evidence establishes a less than sedentary duty level of work to the extent he can only pick up 5 pounds and has additional restrictions that do not fall within that category (JA138, JA163-164, JA169). He also confirmed that with the restrictions of no working overhead, no lifting over 5 pounds, and no pushing, pulling, or hand manipulation, along with his age, education, work experience, and limited transferable skills, Mr. Young could not compete for, secure, or perform employment (JA138-139).

Mr. Broughton also confirmed that he reviewed the jobs in Ms. Harvey's labor market surveys ("LMSs"). He felt that Mr. Young could not qualify for some of those on their face (JA139). He further felt that the LMSs do not represent a range of jobs that exist or which are realistically available to Mr. Young, or which he could realistically secure and perform, for the period from March 26, 2015 to the present (JA139). He felt that some he could not physically perform, that he simply could not compete for any of them, and that he is simply not a good job candidate for a competitive labor market (JA139).[12]

---

[12] As to the specific jobs included in Ms. Harvey's LMS of April 29, 2018, Mr. Broughton did not feel those were suitable for or realistically available to Mr. Young for various reasons, the specifics of which are included in his report at pages JA437 through JA440 (JA437-440).

When asked specifically about the no hand manipulation restriction, and how that effects Mr. Young's ability to realistically compete for employment in the marketplace, Mr. Broughton testified that even most sedentary jobs require the use of the hands to some degree, and almost every job he could think of requires an individual to use their hands (JA140). Thus, with his pain with use of the hands, the restriction against the use of hands for any manipulation, pushing, or pulling, combined with his limited transferable skills, no administrative skills, no background in the jobs outlined in the LMSs, and his limited past work in heavy duty, skilled, physical welding work, he wouldn't be able to compete for, obtain, or perform work (JA140-141).

**In further questioning, Mr. Broughton also noted Mr. Young's age, inasmuch as he is approaching retirement age, such that he would not be a good candidate for retraining in a new job** (JA149-150).[13]

---

[13]    In his report, he noted as follows:

Mr. Steven Young is 59-years-old (DOB: 06/23/1959) and according to the Social Security Administration he is considered an Advanced Age Worker.  In June 2019 he will be 60-years-old and considered an Approaching Retirement Age Worker. As such he is not a job candidate that can expect to be re-trained in a job. It is also a fact that as a person ages they are unable to physically perform as well as they could when they were a younger worker. There are exceptions to this but Mr. Young is not one of them.

(JA440).

In terms of the specifics of the jobs in the LMSs, Mr. Broughton confirmed that he relied upon Ms. Harvey's descriptions of the positions, as well as his understanding of the jobs based on his long term experience in vocational placement (JA153, JA155).

## G.  **Vocational Evaluation Report of Gordon Marc Cooper, LPC, CRC, CRP**

The Vocational Evaluation Report of July 15, 1998 of Gordon Marc Cooper, LPC, CRC, CRP following his evaluation performed on June 23, 1998 is included in the hearing records as EX-13 (JA918-921). That report indicates that vocational testing was instituted by Mr. Cooper on Mr. Young at the time of their meeting (JA918). Mr. Cooper indicated based on Mr. Young's WAIS score that his intellectual functioning was only in the "upper limits of the borderline range to the middle of the average range" and that his "functioning across situations in 'real life' is likely to be significantly lacking in uniformity and consistency" (JA918). The report reflects a Verbal IQ of only 82 and Performance IQ of only 84, along with a borderline score for Arithmetic (JA918).

The report further reflects a reading skill only at the 4th grade level, only in the 2nd percentile in comparison with others of his age group, with a deficient to low-borderline performance level (JA919). Mr. Cooper indicated that Mr. Young "has a deficient ability to recognize and read words" (JA919). He further opined that

Mr. Young's arithmetic skills were at the 6th grade level, in the 10th percentile compared to others in his age group (JA919).

Mr. Cooper also felt that Mr. Young's "GED levels as measured by the WRAT are deficient to below average and may present as a problem in terms of a VR program and vocational placement" (JA920). He further opined that Mr. Young's test results "suggest a man of basically borderline to low-average abilities. His GED levels are very poor and cannot be considered as a vocational asset" (JA920).[14]

## H.    Testimony of Barbara Harvey

Ms. Barbara Harvey testified on behalf of the Employer and Carrier in this case (JA171). When asked about her April 29, 2018 LMS, Ms. Harvey noted that she was unable to speak to anyone at U-Haul Moving and Storage about the Repair Dispatch Specialist position (JA189, JA1051). She conceded that the job would require keeping records on a computer or in written form, and that she did not know what would be involved to "[d]ispatch mobile repair specialists or other qualified personnel to provide assistance or to take equipment to the appropriate repair location" (JA214-215, JA1051).

---

[14]    Note that the Employer's former vocational expert concluded that Mr. Young has a 5th grade reading level, a 4th grade spelling level, and a 6th grade math level (JA268).

With regard to the Virginia Premier Health Plan, Inc. Transportation Dispatcher position, Ms. Harvey confirmed that, although the job description requires the applicant to be "familiar with two-way radios operation/procedures," she does not know if Mr. Young has any experience operating a two-way radio, and that she did not inquire about what type of training would be required for that position (JA215, JA1052). She also confirmed that, based on the required good driving skills, the job would involve driving, including moving vehicles and also working as a substitute driver when necessary, such as if a driver did not show up or there was a schedule conflict (JA216, JA1052).

For the Security Patrol Officer position Dunbar, Ms. Harvey noted that the job description she used was a generic description, but that the job itself could be at various types of sites, such as construction sites, libraries, etc. (JA195-196, JA1056).[15] She stated that the hiring process with that employer would first involve seeing if they had any positions at any specific sites available within the person's restrictions, but that she did not recall talking to them in Mr. Young's case (JA196). She likewise noted that driving may be required, along with walking (JA196, JA218).[16] She also noted that that job would require writing, keeping a log book,

_____

[15]   Most of this testimony related to the security position with Guardus Security, but Ms. Harvey confirmed that they applied equally to the Security Officer position with Dunbar (JA198, JA219).
[16]   The job description further confirms that the worker is "responsible for the security and safety of client properties" (JA1056).

and writing electronic reports, which she agreed implies working with a computer (JA199, JA219; JA1056).[17] Additionally, for all the security jobs, she confirmed that the individual would have to pass a certification test before they could work in those positions (JA219). She confirmed that Mr. Young does not have that certification (JA219).[18]

With regard to the Pearsons Toyota and Casey Auto Group Shuttle Driver jobs, Ms. Harvey confirmed that those are driving jobs (JA200, JA210, JA1058, JA1060). She also confirmed that they require keeping a written record of trips (JA201). She specifically confirmed that the Pearsons Toyota and Casey Auto Group Shuttle Driver jobs would involve fairly continuous driving (JA220, JA221).

Additionally, with regard to the Casey Auto Group Shuttle Driver position, Ms. Harvey conceded that the job would require assisting "customers with getting in and out of vehicles" including the exertion of at least some force with the hand (JA220-221, JA1060).[19]

---

[17]    According to the job description for the Dunbar Security Officer position, the certification required is a "VADCJS Unarmed Security Officer Certification" (JA1057), and the job description notes that the individual is required to "assure security of life and property" (JA1057).

[18]    While Ms. Harvey indicated some employers give a worker has 90 days to pass the test if hired, she agreed that if the do not pass the test, the employment ends (JA232).

[19]    The job description also notes the person would have to keep relevant records such as passenger names and trip location records (JA1059).

When asked about her LMS of May 1, 2019, Ms. Harvey confirmed that, with regard to the Guard One Security Services Unarmed Security Guard job, Ms. Harvey could not recall if she contacted them or had placed anyone there in the past, noting that they were a new company (JA206). She further confirmed that the job would require passing a certification test (JA225). She also confirmed that the job may require patrolling with a vehicle, depending on the site (JA225).[20]

With respect to the America's Auto Auction Unarmed Security Guard job, she likewise confirmed that the job would require passing a certification test (JA226). She also confirmed the job would involve driving the vehicles involved in the auctions (JA226, JA1136).

Ms. Harvey further confirmed that the National Alamo Car Rental Driver positions required extensive driving (JA207-211, JA229, JA1141, JA1142). She confirmed that she can't recall if she spoke with anyone at National Alamo Car Rental, but confirmed that both of those jobs are the same, just at different locations (JA210). She further confirmed that the jobs involves moving the cars between Alamo locations, such as the Newport News International Airport and Norfolk International Airport (JA229-230).

---

[20]     The job description further indicates that the worker would need to "respond[] to emergency situations" (JA1135).

Importantly, Ms. Harvey was asked about the various physical descriptions of the jobs included in her labor market surveys, and confirmed that while they included categories relating to such things as driving, lifting, standing, sitting, etc., they did not include a category relating to "hand" or "fine" manipulation (JA221).

Of perhaps greater importance, Ms. Harvey conceded that, with the exception of the Dunbar Security Officer job, which lists nothing, the Goodwill Retail Associate job, which lists "Occasionally," and the City of Chesapeake Toll Collector job, which lists "Frequently," all of the other job descriptions included "Never" with regard to "Pushing/pulling" (JA221-222, JA1051-1060, JA1132-1143). She did not have a good explanation for that, and attempted to maintain that the jobs at issue did not require pushing and pulling (JA222). Nonetheless, she did concede again that various of the jobs she identified involved working with a computer, writing, keeping logs or records, operating a manual transmission, extended driving, assisting customers when driving, working with a cash register, making change, handling tickets and receipts, and things of that nature (JA222-223). Thus, her testimony in that regard conflicts directly with the job descriptions themselves.

Additionally, Ms. Harvey testified that she would not find a work restriction against pushing, pulling, and hand manipulation significant in terms of a person's

realistic ability to compete for work (JA231).[21] In fact, when asked directly about the jobs in her surveys, she testified - in spite of the various physical requirements addressed above - that they fit within those limitations (JA233).

Separately, **Ms. Harvey agreed that age can have an impact on a person's realistic ability to compete for work** (JA231). **She further confirmed that a person's extended absence from the work force can likewise have an impact on their ability to compete for work** (JA231).[22] **At the same time, however, Ms. Harvey did not reference Mr. Young's age at any time in her reports or**

---

[21]    In that, regard, Ms. Harvey testified as follows:

Q - Now, what about an individual who has restrictions against pushing and pulling and no hand manipulations, would you find that particular restriction significant in terms of a person's realistic ability to compete for work?
A - No.
Q - You would not?
A - No.

(JA231).

[22]    In that, regard, Ms. Harvey testified as follows:

Q - *Do you agree that . . . age does have an impact on their realistic [ability] to compete for work?*
A - *To compete for jobs, it can.*
Q - *Okay. Same question for a person's extended absence from the workforce?*
A - *It can.*

(JA230-231) (emphasis added).

**testimony (JA1044-1060; JA1061-1062; JA1125-1143; JA171-234). She also failed anywhere to address Mr. Young's absence from the work force since essentially 1989 in evaluating or addressing the realistic availability to Mr. Young of the jobs upon which the Employer relied**, failing to address how these factors would impact his realistic ability to compete for the jobs at issue in this case (JA1044-1060; JA1061-1062; JA1125-1143; JA171-234).[23]

## IV.   SUMMARY OF THE ARGUMENT

The Employer bore the affirmative burden of proof regarding the suitable alternate employment inquiry in this case. Where the vocational expert upon which they relied confirmed that an individual's age and absence from the workforce can impact his ability to compete for jobs, but at the same time (1) failed to address whether those factors would impact Mr. Young's ability to realistically compete for jobs in the open market in this case, and (2) failed to specifically address those factors in relation to the 9 remaining jobs accepted by the ALJ in this matter, the Employer's evidence must fail as a matter of law. While the ALJ in her *Decision and Order on Remand* attempted to *infer* that they were considered by Ms. Byers, that is not a reasonable inference (a) on the current record - which is completely devoid of evidence regarding those factors with regard to the jobs at issue, and,

---

[23]   With regard to questions to potential employers about making accommodations, Ms. Harvey agreed that, due to state and federal laws, their standard answer is that they would accommodate restrictions (JA232).

importantly, devoid of evidence *from the vocational expert* addressing those factors, both generally and within the context of each of the jobs at issue; and (b) within the context of the Employer's affirmative burden of proof in this case.[24]

The Employer could have, but failed to have Ms. Harvey address those issues. The Employer could have, but failed to have Ms. Harvey address whether those factors would impact Mr. Young's ability to realistically compete for work generally.[25] The Employer could have, but failed to have Ms. Harvey address whether those factors would impact Mr. Young's ability to realistically compete for the 9 remaining jobs credited by the ALJ. To then attempt to "save" their failures to do so through a blanket inference that is devoid of support in the record is simply improper. In essence, that attempt further underscores the fact that the record simply does not contain sufficient evidence for the Employer to have met their burden of proof on the suitable alternate employment issue in this case as a matter of law.[26]

---

[24] Important within this context is the adverse inference rule, which is an evidentiary rule providing that when a party has relevant evidence within their control that they fail to provide, that failure gives rise to an inference that the evidence is unfavorable to them. *See, e.g., Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516 (6th Cir. 2008).

[25] Notably, the only inference Ms. Harvey's testimony on this issue *would* support is that these factors *would* in fact impact Mr. Young's ability to compete for work.

[26] At a minimum, as previously argued, the ALJ's *Decision and Order on Remand* on this issue falls short of what is required under the Administrative Procedures Act ("APA"), 5 U.S.C. Section 551 *et seq.*, and what was directed by the Board on remand. In Mr. Young's view, attempts to support the absence of proper

On those grounds, Mr. Young continues to assert that the ALJ's decision denying permanent total disability benefits in this matter is contrary to law and cannot be upheld herein. Rather, he asserts that, on the evidence of record, he is entitled to permanent total disability benefits as a matter of law from March 26, 2015 to the present and continuing, along with corresponding compounded annual increases.

At the same time, through the BRB's *Decision and Order* of February 9, 2024, the Board rejected Claimant's contentions. In so doing, the Board somehow found that the ALJ properly considered the factors she was directed to consider, among the

---

considerations on the part of the expert relied upon, and in turn the ALJ, through their generalizations about the job market or jobs being entry level simply do not effectively show how a worker who has significant work restrictions, has essentially been out of the work force for 30 years, only worked one primary job in his life that was heavy duty, physical work which he can no longer perform, limited transferable skills, a high school education with no additional certifications, low vocational testing scores (reading, writing, math, IQ, etc.), no prior work experience involving interaction with the public, no customer service skills, no computer skills, no typing skills, no ability to drive for extended periods, and who was 60 years old as of the date of the hearing in the matter on October 24, 2019 (now 65) could realistically compete for the remaining jobs at issue, or jobs on the open market generally. That is especially the case after reviewing the remaining holes in the vocational expert's testimony about the remaining jobs at issue outlined in Section III(H), above. Alternatively, Mr. Young submits as he did previously that, even if the Employer's vocational evidence should not have been rejected outright based on its fundamental flaws outlined above, especially within the context of those flaws, the Employer's evidence was inherently incredible, that reliance thereon was patently unreasonable, and that the ALJ's reliance thereon was otherwise not supported by substantial evidence of record such that the ALJ's finding that Employer met its burden of establishing suitable alternate employment should be reversed.

others she is required to consider, and that she did not err in somehow concluding that the vocational expert upon which the Employer/Carrier relied in this case to meet their burden of proof on the suitable alternate employment inquiry had done so as well. For the same reasons that were argued to the Board, immediately above, those conclusions simply fail on the current record as a matter of law.

Simply put, the Employer bore the burden of proof on the suitable alternate employment inquiry. Their evidence did not address various relevant factors necessary to that inquiry. As a result, the ALJ also failed to consider those necessary factors in her initial *Decision and Order Denying Modification*. As a direct result, the Board vacated her determinations in that regard and remanded the matter for further consideration. On remand, the ALJ attempted by judicial caveat to infer that the Employer's vocational expert had somehow considered those factors in identifying the positions relied upon, when she clearly did not, and where no affirmative evidence was provided that she did. The Board then improperly condoned that attempt by finding that the ALJ had somehow now considered all the necessary relevant factors in that inquiry. That conclusion by the Board simply fails as a matter of law, and must be reversed herein.

## V.    ARGUMENT

## A.    Standards of Review

This Honorable Court reviews orders of the Benefits Review Board for errors of law and for adherence to the statutory standard set forth in 33 U.S.C. Section 921(b)(3). *See Gilchrist v. Newport News Shipbuilding & Dry Dock Co.*, 135 F.3d 915, 918 (4th Cir. 1998). The Court's review is *de novo*, and the Court accords no deference to the Board's legal interpretations of the LHWCA. *Id.*

33 U.S.C. Section 921(b)(3) provides:

> The Board shall be authorized to hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under this chapter and the extensions thereof. The Board's orders shall be based upon the hearing record. The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole.

In applying those standards, an ALJ's credibility determinations must be rejected where they are inherently incredible or patently unreasonable. *See Cordero v. Triple A Machine Shop*, 580 F.2d 1331, 8 BRBS 744 (9th Cir. 1978), *cert. denied*, 440 U.S. 911 (1979). Additionally, if an ALJ's opinion is not supported by substantial evidence, it must be vacated or reversed. *O Keeffe v. Smith, Hinchman & Grylls Associates, Inc.*, 380 U.S. 359 (1965). Substantial evidence is that which is of a certain quality, "specific and comprehensible evidence, not speculation." *American Grain Trimmers, Inc. v. Director, OWCP*, 181 F.3d 810, 818 (7th Cir. 1999), *cert.*

*denied,* 528 U.S. 1187 (2000). Evidence that is "hedged and speculative" does not suffice. *Id.* "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253, 259 (6th Cir. 2007).[27]

**B.**     **The BRB erred as a matter of law by failing to find that, in relying upon vocational evidence that failed to consider and properly account for essential vocational considerations - most notably Mr. Young's age and extended absence from the work force - the ALJ committed legal error such that her corresponding decision denying permanent total disability benefits is contrary to law and cannot be upheld herein.**

Disability under the Act is an economic concept based upon a medical foundation. *Bath Iron Works Corp. v. White*, 584 F.2d 569, 8 BRBS 818 (1st Cir. 1978); *Owens v. Traynor*, 274 F.Supp. 770 (D.Md. 1967), *aff'd*, 396 F.2d 783 (4th Cir. 1968), *cert. denied*, 393 U.S. 962 (1968); *Perini Corp. v. Heyde*, 306 F.Supp. 1321 (D.R.I. 1969). Disability is generally addressed in terms of its nature, permanent or temporary, and its extent, total or partial. The nature of a disability is determined solely by medical evidence, *see, e.g., SGS Control Services v. Director, OWCP*, 86 F.3d 438, 30 BRBS 57(CRT) (5th Cir. 1996), while the extent of

---

[27]     As noted in *Newport News Shipbuilding and Dry Dock Co. v. Vinson*, 4th Cir. Record No. 01-2300 (June 20, 2002), the Court will reverse an order of the BRB if the award is predicated on an error of law or a factual determination supported by only a scintilla of evidence. *See Gilchrist v. Newport News Shipbuilding & Dry Dock Co.*, 135 F.3d 915, 918 (4th Cir. 1998); *See v. Washington Metropolitan Area Transit Authority*, 36 F.3d 375, 380 (4th Cir. 1994).

disability is an economic as well as a medical concept. *Quick v. Martin*, 397 F.2d 644 (D.C. Cir. 1968); *E. S.S. Lines v. Monahan*, 110 F.2d 840 (1st Cir. 1940).

With that in mind, in order to meet its burden of proof regarding suitable alternate employment, an employer must show the existence of realistically available job opportunities within the geographical area where the claimant resides which they are capable of performing, considering their age, education, work experience, and physical restrictions, and which they could secure if they diligently tried. *Trans-State Dredging v. Benefits Review Bd. (Tarner)*, 731 F.2d 199, 16 BRBS 74 (CRT) (4th Cir. 1984), *rev'g Tarner v. Trans-State Dredging*, 13 BRBS 53 (1980). While the employer is not required to act as an employment agency for the claimant, it must prove the availability of actual, not theoretical, employment opportunities by identifying specific jobs available to the employee within their local community. *New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031, 1042-43, 14 BRBS 156, 164-65 (5th Cir. 1981), *rev'g* 5 BRBS 418 (1977); *Bumble Bee Seafoods v. Director, OWCP*, 629 F.2d 1327, 1330, 12 BRBS 660, 662 (9th Cir. 1980); *Armfield v. Shell Offshore, Inc.*, 30 BRBS 122, 123 (1996); *Royce v. Elrich Constr. Co.*, 17 BRBS 157 (1985); *Pilkington v. Sun Shipbuilding & Dry Dock Co.*, 9 BRBS 473, 480 (1978); *Salzano v. American Stevedores*, 2 BRBS 178 (1975), *aff'd*, 538 F.2d 933, 4 BRBS 195 (2d Cir. 1976); *Bunge Corp. v. Carlisle and T. Michael Kerr, Deputy Assist. Sec., OWCP*, 227 F.3d 934 (7th Cir. 2000); *see also Edwards v.*

*Director, OWCP*, 99 F.2d 1374 (9th Cir. 1993); *cert. denied*, 511 U.S. 1031 (1994) (the *Edwards* Court also stressed the importance of the jobs being regularly available).

Further, for the job opportunities to be realistic, the employer must establish their precise nature, terms, and availability. *Thompson v. Lockheed Shipbuilding & Constr. Co.*, 21 BRBS 94, 97 (1988); *Price v. Dravo Corp.*, 20 BRBS 94 (1987); *Rieche v. Tracor Marine*, 16 BRBS 272 (1984); *Daniele v. Bromfield Corp.*, 11 BRBS 801 (1980).

Overall, the employer must present evidence that a range of jobs exists which is reasonably available and which the disabled claimant is realistically able to secure and perform. *Lentz v. Cottman Co.*, 852 F.2d 129, 21 BRBS 109 (CRT) (4th Cir. 1988); *Vonthronsohnhaus v. Ingalls Shipbuilding, Inc.*, 24 BRBS 154 (1990); *Hayes v. P & M Crane Co.*, 23 BRBS 389 (1990), *vacated*, 24 BRBS 116 (CRT) (5th Cir. 1991); *Green v. Suderman Stevedores*, 23 BRBS 322 (1990).

In keeping with that analysis, the Board and Courts have rejected and upheld rejection of suitable alternate employment evidence which is based on faulty or defective premises, assumptions, or conclusions; is based on incomplete or inaccurate information; is speculative; or which otherwise fails to properly and fully consider relevant information and factors. *See, e.g., Colaruotolo v. SSA Containers, Inc., et al.*, U.S. Ct. App. 9th Cir., Case No. 16-72856 (April 19, 2018) (https://

34

cdn.ca9.uscourts.gov/datastore/memoranda/2018/04/19/16-72856.pdf)     (reversing an ALJ's decision finding that the employer established suitable alternate employment realistically available to the claimant based on certain union tower clerk positions where the vocational expert's testimony was premised on incorrect information; Court stated that the vocational expert relied upon incorrect information in rendering their opinions regarding availability and that their evidence in that regard had to be rejected as a result; Court further stated that the Board "*erroneously perceived this issue as a conflict in evidence rather than a defect in the VE s underlying information*" (Opinion, at 5) (emphasis added); based on the defect in the vocational evidence, the Court remanded the matter to the Board for entry of an award of permanent total disability benefits as a matter of law (Opinion, at 6)); *Marathon Ashland Petroleum v. Williams*, 733 F.3d 182, 47 BRBS 45(CRT) (6th Cir. 2013) (https://caselaw.findlaw.com/us-6th-circuit/1647628.html) (U.S. Court of Appeals for the Sixth Circuit affirmed the Board's decision that substantial evidence supported the ALJ's finding that employer failed to establish the availability of suitable alternate employment; Court stated that, as the LMS identified jobs *based on employer s expert s opinion of claimant s abilities, and not on the restrictions set by claimant s physician*, the ALJ rationally found that the jobs identified were not suitable for claimant); *Ceres Marine Terminals, Inc. v. Knight*, Case No. 97-2767 (4th Cir. Aug. 19, 1998) (http://isys

web.ca4.uscourts.gov/isysquery/38bfdb99-8bc6-4cba-9d1c-6cc9445ca841/7/doc/)

(U.S. Court of Appeals for the Fourth Circuit upheld rejection of Employer's vocational evidence *based in part on numerous inconsistencies in the labor market survey concerning the claimant s limitations*; job opportunities proffered by employer did not accurately reflect the claimant's physical limitations *as suggested in his treating physician's physical capacities evaluation* and in the results of a manual dexterity test); *Pietrunti v. Director OWCP*, 119 F.3d 1035, 31 BRBS 84(CRT) (2d Cir. 1997) (U.S. Court of Appeals for the Second Circuit held that the ALJ erred in finding claimant was only partially disabled despite finding that the *labor market survey was insufficient to establish suitable alternate employment because the consultant failed to account for claimant s psychiatric condition, medication, and inability to read*; as a matter of law, claimant entitled to total disability benefits). *See also White v. Peterson Boatbuilding Co.*, 29 BRBS 1 (1995) (Board vacated the ALJ's finding that suitable alternate employment was established and remanded for consideration of the suitability of the jobs identified in light of claimant's low intelligence and psychological problems; although the vocational counselor seemingly took these problems into account, she *misconstrued the opinion of claimant s psychologist*, and the *ALJ s findings only took into account claimant s physical condition*); *Armfield v. Shell Offshore*, 25 BRBS 303 (1992) (Smith,

36

dissenting) (Board affirmed rejection of vocational evidence based on the failure to consider claimant's psychological condition as well as her physical condition).[28]

Moreover, while it is well-established that the administrative law judge has the discretion to draw inferences from and to determine the weight to be accorded to the evidence of record, *see generally Cordero v. Triple A Machine Shop*, 580 F.2d 1331, 8 BRBS 744 (9th Cir. 1978), *cert. denied*, 440 U.S. 911 (1979); *see also Lennon v. Waterfront Transport*, 20 F.3d 658, 28 BRBS 22(CRT) (5th Cir. 1994); *Todd Shipyards Corp. v. Donovan*, 300 F.2d 741 (5th Cir. 1962), to be affirmed, the administrative law judge's findings and inferences must be rational, supported by the evidence of record, and in accordance with the law, *id.; see also Duhagon v.*

---

[28]    Further, *see Bunge Corp. v. Carlisle*, 227 F.3d 934, 34 BRBS 79(CRT) (7th Cir. 2000), *aff'g* 33 BRBS 133 (1999) (U.S. Court of Appeals for the Seventh Circuit noted that, in order to meet their burden of proof, the employer must provide enough information for the ALJ to determine if the jobs are within claimant's capabilities; ALJ found the jobs presented by employer's expert lacked sufficient information regarding the job duties; *Court rejected the argument that the ALJ applied too stringent a test in requiring more specific information from the vocational expert*, stating that the problem with the expert testimony was not that it failed to be specific in naming actual employers, but that it failed to be specific in addressing claimant's capabilities); *Delay v. Jones Washington Stevedoring Co.*, 31 BRBS 197 (1998) (Board upheld ALJ's finding that claimant was precluded from performing all longshore work requiring climbing, based on doctor's restrictions, and *rejection of the opinion of the vocational expert that claimant could perform some of the work despite those restrictions*); *Brown v. Maryland Shipbuilding & Drydock Co.*, 18 BRBS 104 (1986) (Board held that the ALJ's finding of suitable alternate employment could not be affirmed as he did not explain how claimant's medical restrictions are compatible with the jobs located by the rehabilitation service and he ignored claimant's testimony that he is required to periodically use a therapeutic device).

*Metropolitan Stevedore Co.*, 169 F.3d 615, 33 BRBS 1(CRT) (9th Cir. 1999); *Lockheed Shipbuilding v. Director, OWCP*, 951 F.2d 1143, 25 BRBS 85(CRT) (9th Cir. 1991); *Goldsmith v. Director, OWCP*, 838 F.2d 1079, 21 BRBS 30(CRT) (9th Cir. 1988).[29]

At the same time, the ALJ's inferences, and conclusions and findings relying upon those inferences, must be rejected where there is no evidence in the record to support them, *see, e.g., Troxel v. Metropolitan Stevedore Co.*, BRB No. 04-0680 (May 25, 2005) (https://www.dol.gov/sites/dolgov/files/brb/decisions/lngshore/unpublished/May05/04-0680.pdf); *Watkins v. Newport News Shipbuilding and Dry Dock Co.*, BRB No. 01-0538 (March 5, 2002)(https://www.dol.gov/sites/dolgov/files/brb/decisions/lngshore/published/01-0538.pdf); *Jenkins v. Puerto Rico Marine, Inc.*, BRB No. 96-1635 (https://www.dol.gov/sites/dolgov/files/brb/decisions/lngshore/unpublished/janjun97/96-1635.pdf); *see also Johnson v. Ceres Marine Terminals, Inc.*, BRB No. 15-0153, at fn. 6 (Jan. 14, 2016) (https://www.dol.gov/sites/dolgov/files/brb/decisions/lngshore/unpublished/Jan16/15-0153.pdf).

As outlined above, and as noted explicitly by the Board in their initial *Decision and Order* in this matter, two of the essential factors that must be reviewed

---

[29]    "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, (1951).

in determining whether jobs identified by an employer are suitable for and realistically available to a claimant (whether they could secure such work if they diligently tried) under the Act are the claimant's age and their work experience/history. *See Trans-State Dredging v. Benefits Review Bd. (Tarner)*, 731 F.2d 199, 16 BRBS 74 (CRT) (4th Cir. 1984), *rev'g Tarner v. Trans-State Dredging*, 13 BRBS 53 (1980). In that regard, the Board in that *Decision and Order* specifically directed the ALJ to consider these factors on remand, both generally and with respect to the specific remaining positions identified and relied upon by the Employer and ALJ. Rather than addressing those factors with respect to the particular positions, the ALJ simply made a blanket inference that, despite the clear evidence to the contrary, the Employer's vocational expert *did* consider these factors when identifying the LMS jobs. Mr. Young submits that the record is devoid of evidence to support that inference.

Indeed, as noted by the Board in their initial *Decision and Order* (JA49, JA230-32), and as noted by the ALJ in her *Decision and Order on Remand* (JA56), in her testimony, **Ms. Harvey agreed that age can have an impact on a person's realistic ability to compete for work** (JA231). **She further confirmed that a**

person's extended absence from the work force can likewise have an impact on

their ability to compete for work (JA231).[30]

At the same time, however, Ms. Harvey did not affirmatively reference

or address **Mr. Young's** age at any time in her reports or testimony **(JA1044-**

**1060; JA1061-1062; JA1125-1143; JA171-234), and did not address its impact**

**upon his ability to compete for the specific jobs she identified.**

Similarly, she failed anywhere to affirmatively address the impact of **Mr.**

**Young's** absence from the work force since essentially 1989 - approximately

**thirty** years - upon **his realistic ability to compete for the jobs at issue** (JA1044-

1060; JA1061-1062; JA1125-1143; JA171-234).[31] She conceded that these factors

can impact the realistic availability of jobs to a claimant, yet she failed to address

those factors at all with regard to Mr. Young in general, or to establish that the factors

---

[30]     It should be noted that, in opining that the LMS jobs were not suitable for or
realistically available to Mr. Young in this case, Mr. Broughton relied in part on the
fact that Mr. Young had only had one sustained job after high school - his long term
position with the Employer as a welder which he can no longer perform, and which
he last performed in 1989 (JA137-138, JA139).

[31]     Notably, in her April 29, 2018 LMS report, Ms. Harvey states that she
addressed Mr. Young's wage-earning capacity "given his work history, education,
reported physical capabilities and his transferrable skills" (JA1045). The same
statement is referenced in her LMS of May 1, 2019 (JA1126). Age is not referenced,
nor is Mr. Young's extended absence from the work force since essentially 1989 - in
essence the almost complete absence of any work history for approximately three
decades. Note further that the ALJ did not find the two jobs Mr. Young attempted
briefly and unsuccessfully to constitute suitable alternate employment, and the
Employer did not appeal the ALJ's failure to so find. Moreover, any such finding is
insupportable on the current record.

would not impact the realistic availability to Mr. Young of the labor market survey

jobs upon which she relied in this case. For the ALJ to then "infer" that Ms. Harvey

*did* affirmatively consider these factors (especially when she did not even mention

them in her reports, or in her testimony in support of the LMS jobs) is not reasonable,

or rational, and is a mischaracterization of the evidence of record.[32] At the same

time, without such evidence in this case, the Employer's evidence fails as a matter

of law.[33]

---

[32]    Importantly, the ALJ in her *Decision and Order on Remand* dramatically mischaracterizes the nature of Mr. Young's work history as well when making the crucial inference in this case ("Therefore, I am able to infer that she considered Claimant's age and lack of *recent* work history in identifying jobs that would be suitable for him as of the dates of her surveys." (JA56; emphasis added.)). Additionally, it is unclear upon what basis the ALJ concluded that "[i]n fact, these are the exact type of jobs that even a *layman* would consider appropriate for someone of advanced age and an absence from the workforce to perform." (JA56) (emphasis added).

[33]    Note that the vocational expert called by Mr. Young, Mr. Gray Broughton, confirmed that Mr. Young is approaching retirement age, opining that he would not be a good candidate for retraining in a new job (JA149-150). He further noted as follows in his report:

> Mr. Steven Young is 59-years-old (DOB: __/__/1959) and according to the Social Security Administration he is considered an Advanced Age Worker. In June 2019 he will be 60-years-old and considered an Approaching Retirement Age Worker. As such he is not a job candidate that can expect to be re-trained in a job. It is also a fact that as a person ages they are unable to physically perform as well as they could when they were a younger worker. There are exceptions to this but Mr. Young is not one of them.

(JA440).

As for the Board, it is difficult to reconcile their two decisions in context. On the current record, the Board agreed initially that the ALJ had failed in her initial *Decision and Order Denying Modification* to properly consider various relevant vocational factors in rendering her decision. While she did then reject an additional 6 jobs on remand based directly on *some* of the vocational items referenced by the Board in their initial *Decision and Order* (namely, the lack of the "excellent customer service" skills required for some positions or the ability to operate a manual transmission (JA48, JA56-57)), they somehow allowed the Judge by judicial caveat in their second *Decision and Order* to basically skip over two of the essential elements which they said she did not consider initially, namely Mr. Young's advanced age and extended (basically 30 year) absence from the work force. They cited the proper legal standards. Yet they overlooked the fact that the vocational evidence upon which the Employer attempted to rely in meeting their affirmative burden of proof clearly *did not* properly address those factors. How do we know that? They are not referenced in the vocational counselor's reports or her hearing testimony, other than her admitting on cross examination that those factors could have an impact on a person's ability to realistically compete for work. To then allow a self serving statement that she considers the whole person to overlook or skip over the absence of that evidence in her reports and testimony is simply improper, as she clearly did not consider those factors in identifying the jobs at issue. Therefore, to

the extent the ALJ relied on that evidence in reaching her ultimate conclusions as to the jobs at issue, such reliance is legal error.[34]

As highlighted above, the Employer could have, but failed to have Ms. Harvey address those issues. The Employer could have, but failed to have Ms. Harvey address whether those factors would impact Mr. Young's ability to realistically compete for work generally.[35] The Employer could have, but failed to have Ms. Harvey address whether those factors would impact Mr. Young's ability to realistically compete for the 9 remaining jobs credited by the ALJ. To then attempt to "save" their failures to do so through a blanket inference that is devoid of support in the record is simply improper.[36] In essence, that attempt further underscores the fact that the record simply does not contain sufficient evidence for the Employer to

---

[34]    Note that allowing the ALJ to reach any conclusion regarding suitable alternate employment in the absence of this void on this record would likewise be improper.

[35]    Again, the only inference Ms. Harvey's testimony on this issue *would* support is that these factors *would* in fact impact Mr. Young's ability to compete for work, including the specific jobs relied upon by the Employer, and ALJ.

[36]    Note that the hearing record before the OALJ ranged 1,048 pages from JA96-1143, and evidence of necessary consideration of these specific factors, and support for the remaining positions at issue within that consideration, while clearly required under pertinent standards and relevant to the suitable alternate employment inquiry, is not evident therein.

have met their burden of proof on the suitable alternate employment issue in this case.[37]

In the end, any failures in evidence must be strictly construed against - rather than in favor of - the Employer, given that they bore the burden of proof on the suitable alternate employment inquiry, and such glaring evidentiary failures on these essential factors simply cannot be overlooked. Neither the ALJ nor the Board should simply assume on this record that the factors were considered, and would not impact Mr. Young, or his ability to compete for these jobs.[38] Instead, on these conceded and uncontradicted facts relating to their potential impact, the Employer's failure to present the necessary evidence that the jobs at issue are realistically available to Mr. Young even with his advanced age and absence from the work force for approximately 30 years requires rejection of their vocational evidence in full, and a finding of permanent total disability benefits in favor of Mr. Young.

---

[37]    Again, important within this context is the adverse inference rule, which is an evidentiary rule providing that when a party has relevant evidence within their control that they fail to provide, that failure gives rise to an inference that the evidence is unfavorable to them. *See, e.g., Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516 (6th Cir. 2008).

[38]    Even if the Employer's vocational counselor had addressed these issues, and rejected the extended absence from the work force as an element negatively impacting the realistic availability of the identified jobs, any such evidence and rejection would have been incredulous, inherently incredible, patently unreasonable, and defying all common sense.

## VI.    <u>CONCLUSION</u>

Based on the foregoing, Petitioner respectfully requests that this Honorable Court reverse the BRB's *Decision and Order* of February 9, 2024, and that portion of the Administrative Law Judge's underlying *Decision and Order on Remand* of July 15, 2022 denying permanent total disability benefits, and enter an award in his favor for permanent total disability benefits from March 26, 2015 to the present and continuing. Alternatively, he requests remand to the ALJ for further consideration of the various factors and issues outlined herein.

## VII.    <u>REQUEST FOR ORAL ARGUMENT</u>

The Petitioner hereby requests oral argument in this matter.

**RESPECTFULLY SUBMITTED,**
**STEVEN T. YOUNG**

BY:    *s/ Matthew H. Kraft*
Counsel for Petitioner

Matthew H. Kraft, Esq.
VSB No. 39089
Matthew H. Kraft, P.L.C.
317 30th Street
Virginia Beach, VA  23451
(757) 390-3340 phone
(757) 390-3344 facsimile
matt@mattkraftlaw.com

45

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

This Brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[X] this Brief or other document contains **<u>11,849</u>** words.

This Brief or other document complies with the typeface and type style requirements because:

[X] this brief or other document has been prepared in a proportionally spaced typeface using **<u>Apple, Inc./Mac Pages</u>** in **<u>Times New Roman font size 14.</u>**


_s/ Matthew H. Kraft_____
Matthew H. Kraft, Esq.
Counsel for Petitioner, Steven T. Young

46